GL Robert Witmer,' J.
Plaintiffs have instituted this action to procure judgment declaring an amendment of the Zoning Ordinance of the. Town of Walworth unconstitutional and void, and enjoining the use of lands described therein as authorized by said amendment. Although originally plaintiffs also attacked the formality of the adoption of the amendment, upon the trial they withdrew such contention. Plaintiffs’ action rests solely upon their contention that the action of the defendant Town Board in adopting the amendment to the ordinance was arbitrary, capricious, unreasonable, confiscatory, unlawful and unconstitutional, and deprives plaintiffs of the beneficial use of their property without due process of law.
The evidence shows that in 1956 a Zoning Ordinance was adopted in and for the Town of Walworth, in which only three districts were established, to wit, Farming, Residential and Commercial. The official zoning map on which these districts were delineated shows that at three widely separated intersections in the town, commercial areas were established; and that the rest of the town was zoned for farming and residential uses. Some amendments have been made to the ordinance since its enactment. The last amendment, adopted February 24, 1961, is the one under attack herein. By it the Town Board created a fourth district, known as “ Industrial ”, in which was permitted ‘1 any other use of land, buildings and structures for commercial or industrial purposes not prohibited by law.” The Industrial District ;_was thereby established in virtually the center of the Town of Walworth in the Farm-Residential District, consisting of approximately 280 acres of land owned by or optioned to the Dolomite Products Co., Inc., hereinafter referred to as “ Dolomite.”
It is conceded by defendants that several of the plaintiffs own farms adjacent to the new Industrial District, and that Dolomite intends to quarry, crush, sell and deliver rock,, and to make asphalt and sell and deliver it on and from its said premises in said district; and in connection with such quarrying, that there will be blasting which will cause some vibration and noise.
- Plaintiffs contend that the operation of such a quarry and the attendant aspects of the business will make their properties less desirable and less valuable. They also contend that the defendants, as the Town Board of Walworth, enacted the amendment of the ordinance in violation of the Town Law, in that, they argue, it was not done in pursuance of a comprehensive plan. *779 They further complain because, contrary to the provision of the original.ordinance (art. VII, § 4), no.planning’ board was created untit nearly a year after the' questionecLamendment was. adopted;.
-The Town -Law ('§'. 271)' authorizes but does not require the establishment of a planning board. The fact that one was not appointed prior to the enactment of the amendment in question need not detain us, because the failure to appoint such a board does not invalidate the ordinance or amendments to it (see Matter of Leone v. Brewer, 259 N. Y. 386); and it is clear that even had a planning board been appointed, the Town Board would have had power to act in a manner contrary to the recommendations of such planning board without being charged with arbitrary action. (Church v. Town of Islip, 8 N Y 2d 254, 256-257.)
The evidence shows that the Town of Walworth is rural,.“ a pastural area ”, with population of less than 2,800 persons, and has no industry and no industrial district except as permitted by this amendment. Plaintiffs’ expert testified that it is desirable for industry to be brought into this town, and that most industries would require a water system and a sewage disposal system. The town has no water system nor sewage disposal system and has the benefit óf few public utilities. It has limited real estate values for tax assessment purposes. There is only one school in the town, kindergarten through the sixth grade, .located at the edge of the Commercial District in the southeast corner of the town. The older students in Walworth attend school in the Central School District in the adjoining Town of Ontario.
The Town Board members testified that they were desirous of taking zoning action which would serve to stimulate industrial, business and residential growth of the town, give rise to creation of jobs, and increase the value of properties in the town. The board members acknowledged that the amendment was adopted to enable and induce Dolomite to come into the town with its operation, but they deny making any contractual arrangement with Dolomite and deny that this amounted to “contract zoning”. Defendants have clearly sustained this point. (See Church v. Town of Islip, supra, p. 259.)
For a case involving facts essentially similar to the one at bar and in which the ordinance was upheld, see Ward v. Montgomery Township (28 N. J. 2d 529 [1959]).
Plaintiffs insist that this . enactment amounts. to “ spot zoning.” Such zoning is defined as “ the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners ”, and “ is the very antithesis of planned zoning ” (Rodgers v. Village *780 of Tarrytown, 302 N. Y. 115, 123-124). ' “ The expression £ spot zoning ’ does not bear magical import.- Ah ordinance is not-to be labeléd ‘ spot zoning. ’"merely because' it -singles- out and affects one parcel of land.. The true test is whether the.change is pariof a well-considered and comprehensive plan.” (Linn v. Town of Hempstead, 10 Misc 2d 774, 776, Pittoni, J.). It appears that 1 ‘ the relevant inquiry is not whether the particular zoning under attack consists of areas fixed within larger areas of different use, but whether it was accomplished for the benefit of individual owners rather than pursuant to a comprehensive plan for the general welfare of the community ” (Rodgers v. Village of Tarrytown, 302 N. Y. 115, 124, supra); and it further appears that no case involving more than 13 acres of land has ever been adjudged to constitute “ spot zoning ”. (Note, 10 Syracuse Law Rev., 303, 305.)
The law gives to the Town Board power to regulate by zoning ordinance ‘ ‘ for the purpose of promoting * * * the general welfare of the community ”. (Town Law, § 261.) ‘‘ Such regulations shall be made in accordance with a comprehensive plan * * * [and] with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. ” (Town Law, § 263.)
What constitutes “ comprehensive planning ”? “ It is easier to determine what a ‘ comprehensive plan ’ is not, than to define what it is. It is hot necessarily a ‘ master plan ’ such as may be drafted by a municipality before embarking on a program of capital improvements; * * * nor need it be a written plan.” (Note, 10 Syracuse Law Rev., 303, 304.) ££ The comprehensive plan in New York and most jurisdictions is neither a written document nor a ‘ plan ’ in the usual sense of that term, unless an underlying purpose to control land use for the benefit of the whole community may be regarded as such.” (Id., p. 305.) In an article entitled “New York State Zoning Gases in the Sixties”, in the June, 1962 issue of the New York State Bar Journal (vol. 34, No. 3) Mr. Stephen Sussna writes (pp. 199-200): “ we cannot forget that despite the early and universal requirement that we zone in accord with a comprehensive plan, the vast majority of zoning ordinances are not the end-products of thorough, objective planning. And the question can be raiséd whether under our society they could be, and whether or not we are not caught within the web of an often-mouthed dream. For it is indisputable that. generally the planning that has ■ been accomplished in our nation is essentially individualistic, minimal, *781 and piecemeal. At any rate for the most part we have zoning without much comprehensive planning.** It is common knowledge- that much rezoning in. communities.in the Roehestér area, in recent years has followed the pattern; if such it may be called, described by Mr. Sussna.
The board contends that its action .was taken in accordance with its plan of zoning for the town. In 1956, it is claimed, the ordinance was adopted so as to constitute a brake on unlimited use of lands, pending further consideration by the Town Board. By 1961 the board felt that the best interests of the town called for the creation of this sizeable industrial area, which, the board believed, will spur the economic development of the town. It is observed that in rezoning this 280-acre area to authorize industrial uses therein generally, the defendants have envisaged more than the limited use of such property by an existing owner or for Dolomite’s present purposes. It is also noted that the board did not attempt to treat the ordinance, in effect, as a grant of a variance, nor to prescribe conditions for particular uses of the area, as it had power to do. (See Church v. Town of Islip, 8 N Y 2d 254, 257, supra.) This was within the province of the Town Board, shows that the enactment was general in nature, and does not impair its validity.
The Town Board employed no expert zoning planner, although they did employ a very competent lawyer, namely, John M. Wilson, now deceased. The evidence shows that the Town Board acted in good faith to attain a lawful objective, i.e., the promotion of the general welfare of the community. The sole question is, did they act lawfully in effectuating that objective ?
The court may not prescribe the form and manner in which the Town Board should perform its functions. The board chose to work out their zoning plan for the town in a manner different from what some would deem a more orderly and formal method. But the evidence shows that they were acquainted with the situation at hand, that they considered the varied aspects of the problem with some thoroughness, and that they came to a deliberate conclusion. It is important to note that the board acted unanimously. It is also noteworthy that 154 residents of the town signed petitions in favor of the adoption of the questioned amendment, and 62 residents signed in opposition thereto. Clearly the board did not act arbitrarily or capriciously. In Church v. Town of Islip (supra, p. 258) the court said: “We start with the proposition that this zoning being a legislative act (not a variance) is entitled to the strongest possible presumption of validity and must stand if there was any factual basis therefor [citations omitted]. The Town Board’s action *782 in this instance was unanimous. ’ ’ In Wiggins v. Town of Somers (4 N Y 2d 215, 218-219) the- court said:“ Legislative enactments are' presumed to be constitutional, i.e., they áre presumed to be supported by facts known to the Legislature [citations omitted]. While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt [citations omitted]. Particularly apropos is the rule that the law may not be arbitrary and it must be reasonably related to some manifest evil [citations omitted], which, however, need only be reasonably apprehended [citation omitted]. And we must be guided by the familiar principle that ‘ it is only as a last resort ’ that courts strike down legislative enactments on the ground of unconstitutionality. ” In Rodgers v. Village of Tarrytown (302 N. Y. 115, 121, supra) the court said: “ Accordingly, the power of a village to amend its basic zoning ordinance in such a way as reasonably to promote the general welfare cannot be questioned. Just as clearly, decision as to how a community shall be zoned or rezoned, as to how various properties shall be classified or reclassified, rests with the local legislative body; its judgment and determination will be conclusive, beyond interference from the courts, unless shown to be arbitrary, and the burden of establishing such arbitrariness is imposed upon him who asserts it.” In Shepard v. Village of Skaneateles (300 N. Y. 115, 118) the court said:
‘ ‘ Upon parties who attack an ordinance such as the present rests the burden of showing that the regulation assailed is not justified under the police power of the state by any reasonable interpretation of the facts. ‘ If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control.’ [Citations omitted.]
‘ ‘ Zoning laws, enacted as they are to promote the health, safety and welfare of the community as a whole (see Village Law, § 175), necessarily entail hardships and difficulties for some individual owners. No zoning plan can possibly provide for the general good and at the same time so accommodate the private interest that everyone is satisfied. * " * There must, however, be a proper balance between the welfare of the public and the rights of the private owner. The zoning regulation— to be reasonably related ‘to the preservation of' the scheme, and the purpose as a whole ’ — may neither deprive an individual owner ‘ of.all beneficial use of his property ’ [citation omitted] nor impose upon-him a ‘ special hardship unnecessarily and unreasonably. ’ ’ ’
In the light of the above principles it is clear that the amendment in question may not be struck down by this court. It is *783 not for the court to say that it disagrees with the action of the Town Board nor that it believes the board acted unwisely. The board having acted in good faith to promote the general welfare of the Town of Walworth, its action must stand unless there was no reasonable basis to support the board’s conclusion and the action amounts to a confiscation of plaintiffs’ properties in substantial measure.
There is evidence that the board had been trying to get industries to locate in Walworth; that they studied the nature of the business of Dolomite which they expected would be commenced in the area as a consequence of the amendment; that they had reasonable grounds to believe that the area was particularly well suited for Dolomite’s business; that the business would be a substantial benefit to the town; and that, judging from the experience of the Towns of Penfield and Gates in neighboring Monroe County where Dolomite has plants similar to the one it plans to build in Walworth, the board could reasonably conclude that 'there will be little detriment to surrounding properties, but on the contrary there may in due time be substantial benefits to them. Whether or not the board’s optomistic views in these respects materialize is not for the court to consider.
Plaintiffs introduced evidence that by reason of blasting and trucking, the Dolomite operation would cause some annoyance to them; and plaintiffs’ expert testified that it would be detrimental to plaintiffs’ properties. Such evidence was enough to get plaintiffs beyond a motion for nonsuit (see Rice v. Van Vranken, 225 App. Div. 179, affd. 255 N. Y. 541; Atkins v. West, 222 App. Div. 308). Plaintiffs produced no specific evidence of detriment to them by reason of this ordinance. “ [C] ardiñal is the principle that what is best for the body politic in the long run must prevail over the interests of particular individuals.” (Shepard v. Village of Skaneateles, 300 N. Y. 115, 118, supra.) ‘ ‘ A possible depreciation in value is not of too great significance, for the pecuniary profits of the individual are secondary to the public welfare.” (Id., p. 120.) “ Assuming there will be some depreciation of plaintiffs’ property and they will suffer special hardship if the incinerator is erected, this is insufficient to invalidate a zoning regulation which promotes the general welfare.” (Hudson v. Town of Oyster Bay, 248 App. Div. 737.) The evidence produced by the defendants strongly supports their view that the Dolomite operation may enhance plaintiffs’ values rather than injure them. Upon the evidence as a whole I find that plaintiffs have failed to carry their burden of proof that they will sustain substantial damage by reason of this ordinance. (Thomas v. Town of Bedford, 29 Misc 2d 861, affd. 15 A D 2d *784 573, 11 N Y 2d 428, affirmed; Brechner v. Incorporated Vil. of Lake Success, 25 Misc 2d 920, affd. 14 A D 2d 567; Atkins v. West, 222 App. Div. 308, 309, supra; Ponemon v. Incorporated Vil. of East Hills, 32 Misc 2d 454.)
Accordingly, within the principles above set forth there being factual basis to support the reasonableness of the ordinance and no substantial injury to plaintiffs’ properties having been established, the plaintiffs have failed to prove the right to have the court nullify this ordinance.
The ordinance is, therefore, declared to be constitutional and valid, and the action of the plaintiffs to enjoin the use of the said premises for industrial purposes is dismissed.